2006 UT App 142

**STATE of Utah, Plaintiff and Appellee,**

v.

**Franklin Eric HALLS, Defendant and Appellant.**

**No. 20040939–CA.**

Court of Appeals of Utah.

April 13, 2006.

---

K. Andrew Fitzgerald, Moab, for Appellant.

Mark L. Shurtleff, Attorney General and J. Frederic Voros Jr., Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, GREENWOOD, and BILLINGS.

## OPINION

BILLINGS, Judge:

¶ 1 Defendant Franklin Eric Halls appeals from his convictions of one count of unlawful possession of a controlled substance, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (Supp. 2005); one count of unlawful possession of an imitation controlled substance, *see* Utah Code Ann. § 58–37b–4 (2002); and one count of possession of paraphernalia, *see* Utah Code Ann. § 58–37a–5 (2002). We affirm.

## BACKGROUND

¶ 2 On March 1, 2004, Officer Jim Eberling of the Monticello Police Department and Agent Travis Clark, a parole officer from the Department of Corrections, Adult Probation and Parole, went to Defendant's parents' house to speak to Defendant about a possible hit-and-run accident. Upon arriving, they discovered that Defendant was not home and decided to wait for him to return from work. Shortly thereafter, Defendant arrived at his parents' home in a pickup truck driven by Jim Abrams.

¶ 3 Approaching Defendant's parents' home, Abrams glanced over at Defendant and noticed him bending over. He testified that it looked as if Defendant was shoving something under the seat. Abrams dropped off Defendant and left.

¶ 4 When Abrams arrived at his own home, he checked under the seat and found a black box containing some bags and scales. Upset that Defendant would hide paraphernalia in

his truck, Abrams took the items he found to the police station and gave them to Police Chief Adair.

¶ 5 Meanwhile, Officer Eberling and Agent Clark conducted a search of Defendant, his bedroom, and his vehicle. Agent Clark accompanied Officer Eberling to Defendant's residence because Agent Clark had been having some problems with Defendant and because Defendant had recently tested positive for methamphetamine. After searching Defendant's bedroom and truck, Officer Eberling and Agent Clark took Defendant to the police station to question him regarding the hit-and-run accident and to possibly administer a urinalysis drug test.

¶ 6 As they arrived at the police station, Chief Adair was across the street searching Abrams's truck. Officer Eberling and Agent Clark took Defendant into the station for questioning. During questioning, Chief Adair knocked on the door and handed Officer Eberling the items found under the seat in Abrams's truck. Those items included a bag containing a white crystal substance, a black box containing a set of scales and a couple of small plastic bags, and a larger empty bag. Chief Adair explained to Officer Eberling how Abrams found these items.

¶ 7 Officer Eberling and Agent Clark then began to question Defendant regarding the items. Defendant first denied that the items belonged to him, but he eventually admitted that the items were his. Defendant told Officer Eberling and Agent Clark that the white crystal substance was his and that it was not methamphetamine, but a cutting agent called "MSM." Defendant stated that he was planning to mix the cutting agent into an ounce of methamphetamine so that he could use one ounce for free and sell the other. Defendant also stated that the scales were used to weigh the methamphetamine he sold and admitted that two of the small plastic bags had contained methamphetamine. Subsequent testing confirmed that the white crystal substance was not methamphetamine; the small plastic bags and scales tested positive for methamphetamine.

¶ 8 At trial, Defendant testified that he did not know anything about the items found in Abrams's truck and denied owning them.

Defendant stated that on the day he was questioned about the items found in Abrams's truck, he believed the police had pulled Abrams over, searched his truck, and found the contraband. Because Officer Eberling and Agent Clark told Defendant that he was already in trouble for violating his parole, he decided to admit ownership of the contraband to protect Abrams from any potential punishment.

¶ 9 The jury found Defendant guilty of possession of a controlled substance, possession of an imitation controlled substance, and possession of drug paraphernalia. After his conviction, Defendant stipulated to a prior conviction of possession of a controlled substance for purposes of enhancement, even though Defendant's prior judgment read that he was convicted of possession with intent to distribute. The trial court indicated that there was a clerical error in the prior judgment, but that Defendant clearly had the prior conviction to enhance Defendant's current conviction to a second degree felony, resulting in a one- to fifteen-year sentence. Defendant appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 On appeal, Defendant asserts that the reasonable doubt jury instruction given at trial incorrectly stated the law and violated his due process rights. "Whether [a jury] instruction correctly states the law is reviewable under a correction of error standard, with no particular deference given to the trial court's ruling." *State v. Archuleta,* 850 P.2d 1232, 1244 (Utah 1993). However, rule 19(e) of the Utah Rules of Criminal Procedure provides, in pertinent part: "Unless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." Utah R.Crim. P. 19(e). Defendant admits that he never objected to the reasonable doubt jury instruction at trial. Therefore, pursuant to rule 19(e), Defendant's failure to object to the reasonable doubt jury instruction at trial renders the instruction "reviewable for plain error, or manifest injustice, rather than for correctness." *State v. Cruz,* 2005 UT 45, ¶ 16, 122

P.3d 543; *see also State v. Casey*, 2003 UT 55,¶ 40, 82 P.3d 1106 ("[I]n most circumstances[,] the term manifest injustice is synonymous with the plain error standard ...." (quotations and citation omitted)).

¶ 11 Defendant also asserts that the trial court erred when it enhanced Defendant's sentence based on the parties' stipulation that Defendant had a prior conviction for possession, because Defendant's prior judgment incorrectly stated that the prior conviction was for possession with the intent to distribute. According to Defendant, since the prior judgment is not correct, it cannot be a final judgment for the purposes of enhancement. However, because Defendant invited the error, which he now appeals, we will not review it. We will not review "an error committed at trial when [Defendant] led the trial court into committing the error." *State v. Dunn*, 850 P.2d 1201, 1220 (Utah 1993).

### ANALYSIS

### I. Defendant's Reasonable Doubt Jury Instruction

¶ 12 Defendant asserts that the reasonable doubt jury instruction given at his trial incorrectly stated the law and violated the Due Process Clause of the United States Constitution. At Defendant's trial, the reasonable doubt instruction was in compliance with *State v. Robertson*, 932 P.2d 1219 (Utah 1997), *overruled in relevant part by State v. Reyes*, 2005 UT 33, 116 P.3d 305. It instructed the jury that "[t]he State must eliminate all reasonable doubt." However, after Defendant's trial, the Utah Supreme Court expressly abandoned the "obviate all reasonable doubt" requirement of the *Robertson*

test. *State v. Reyes*, 2005 UT 33,¶ 30, 116 P.3d 305. Relying on *Reyes, see id.*, Defendant now asserts that under the new standard, the reasonable doubt jury instruction given at trial violated his due process rights.

¶ 13 Rule 19(e) of the Utah Rules of Criminal Procedure provides, in pertinent part: "Unless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." Utah R.Crim. P. 19(e). Because Defendant admits that he did not object to the reasonable doubt jury instruction at trial, "we will only remand for a new trial if the error ... constitutes a 'manifest injustice.'"[1] *Casey*, 2003 UT 55 at ¶ 39, 82 P.3d 1106.

¶ 14 "[M]anifest injustice" has been defined as being "synonymous with the 'plain error' standard." *Id.* at ¶ 40. The manifest injustice or the plain error standard requires the appellant to show that " '(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.' " *Id.* at ¶ 41 (quoting *State v. Powell*, 872 P.2d 1027, 1031 (Utah 1994)). It is under this plain error standard that we review Defendant's appeal of the reasonable doubt jury instruction given at his trial.

¶ 15 Under the first prong of the plain error standard, Defendant must show that "[a]n error exists." *Id.* Defendant asserts that the error in the reasonable doubt jury instruction given at trial is the use of the phrase "eliminate all reasonable doubt." In

---

1. Based on the invited error doctrine, the Utah Supreme Court has stated that "if counsel, either by statement or act, affirmatively represented to the court that he or she had no objection to the jury instruction, we will not review the instruction under the manifest injustice exception." *State v. Hamilton*, 2003 UT 22,¶ 54, 70 P.3d 111. In this case, defense counsel not only failed to object to the reasonable doubt jury instruction, but also expressly agreed to the reasonable doubt jury instruction. Utah law has not addressed whether the invited error doctrine applies when there has been a change of settled law. However, federal law states that "[w]here a defendant

submits proposed jury instructions in reliance on current law, and on direct appeal that law is declared constitutionally infirm, we will not apply the invited error doctrine. Instead, we will review for plain error." *United States v. West Indies Transp., Inc.*, 127 F.3d 299, 305 (3d Cir. 1997). Because we similarly acknowledge an exception to the preservation rule for exceptional circumstances "where a change in law or the settled interpretation of law colored the failure to have raised an issue at trial," *State v. Irwin*, 924 P.2d 5, 10 (Utah Ct.App.1996), we do not apply the invited error doctrine here.

*Reyes,* the Utah Supreme Court expressly abandoned the phrase "obviate all reasonable doubt" as a requirement for a reasonable doubt jury instruction. 2005 UT 33 at ¶ 30, 116 P.3d 305. For the purposes of this appeal, the parties do not dispute that "obviate all reasonable doubt" and "eliminate all reasonable doubt" are similar. However, we consider the "eliminate all reasonable doubt" jury instruction to be less troublesome than the *Reyes* "obviate all reasonable doubt" instruction.

■ ¶ 16 In *State v. Cruz,* 2005 UT 45, 122 P.3d 543, the Utah Supreme Court determined that *Reyes* effectively overruled the *Robertson* test for reasonable doubt jury instructions and adopted the test enunciated by the United States Supreme Court in *Victor v. Nebraska,* 511 U.S. 1, 22, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). *See Cruz,* 2005 UT 45 at ¶ 21, 122 P.3d 543. The *Victor* test provides:

> [S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, "taken as a whole, the instructions [must] correctly convey the concept of reasonable doubt to the jury."

*Victor,* 511 U.S. at 5, 114 S.Ct. 1239 (second alteration in original) (citations omitted). This overarching principle, that "taken as a whole, [the reasonable doubt jury instruction must] correctly communicate the principle of reasonable doubt" to the jury, is now the standard for "assessing the validity of reasonable doubt instructions." *Cruz,* 2005 UT 45 at ¶ 21, 122 P.3d 543. Therefore, if Defendant's reasonable doubt jury instruction, " 'taken as a whole, ... correctly convey[ed] the concept of reasonable doubt to the jury,' " *id.* at ¶ 20 (quoting *Victor,* 511 U.S. at 22, 114 S.Ct. 1239), then it was not erroneous. We conclude that Defendant's jury instruction was not in error.

¶ 17 The *Reyes* court found the "obviate all reasonable doubt" concept "linguistically opaque and conceptually suspect." 2005 UT 33, ¶ 26, 116 P.3d 305. The potential problem with the "obviate all reasonable doubt" requirement is that it

contemplates a two-step undertaking: the identification of the doubt and a testing of the validity of the doubt against the evidence.... The "beyond a reasonable doubt" standard does not, however, condition a conclusion that a doubt is reasonable on an ability either to articulate the doubt or to state a reason for it.

*Id.* at ¶ 27. Therefore, *"[t]o the extent* that the *Robertson* 'obviate' test would permit the State to argue that it need only obviate doubts that are sufficiently defined, the test works to improperly diminish the State's burden." *Id.* at ¶ 28 (emphasis added). Essentially, the obviate test's "substantial risk of causing a juror to find guilt based on a degree of proof below beyond a reasonable doubt," *id.* at ¶ 30, comes from its potential to allow the State to argue that a juror must articulate and obviate specific doubts.

¶ 18 This is not the situation here. The trial court's jury instruction stated:

> A defendant is presumed innocent until proven guilty beyond a reasonable doubt. This presumption follows the defendant throughout the trial. If a defendant's guilt is not shown beyond a reasonable doubt, the defendant should be acquitted.
>
> The [S]tate must eliminate all reasonable doubt. Proof beyond a reasonable doubt is not proof to an absolute certainty. Reasonable doubt is a doubt based on reason, which is reasonable in view of all the evidence. Reasonable doubt is not a doubt based on fancy, imagination, or wholly speculative possibility. Proof beyond a reasonable doubt is enough proof to satisfy the mind, or convince the understanding of those bound to act conscientiously, and enough to eliminate reasonable doubt. A reasonable doubt is a doubt that reasonable people would entertain based upon the evidence in the case.

■ ¶ 19 This reasonable doubt jury instruction given at Defendant's trial did not convey the message that the State must only eliminate those doubts that are sufficiently defined; neither did the State argue that the juror need articulate and eliminate specific doubts. Instead, the jury instruction, "taken as a whole, correctly communicate[d] the principle of reasonable doubt" to the jury. *Cruz,* 2005 UT 45 at ¶ 21, 122 P.3d 543.

¶ 20 Although the language "obviate all reasonable doubt" has been abandoned by *Reyes, see* 2005 UT 33 at ¶ 34, 116 P.3d 305, we are not persuaded that the use of "eliminate all reasonable doubt" in Defendant's jury instruction constitutes manifest injustice because the reasonable doubt jury instruction "correctly communicate[d] the principle of reasonable doubt" to the jury. *State v. Cruz,* 2005 UT 45, ¶ 21, 122 P.3d 543.[2] Therefore, we do not remand for a new trial.

## II. Defendant's Sentence Enhancement

¶ 21 Defendant also claims that the trial court erred when it enhanced his sentence based on a prior conviction of possession of a controlled substance, even though Defendant stipulated to the prior conviction. Essentially, Defendant argues that because the judgment from his first conviction for possession incorrectly stated that he pleaded guilty to possession with intent to distribute, when he actually only pleaded to simple possession, the judgment is ineffectual.

¶ 22 Defendant repeatedly stipulated to the fact that he had a prior conviction for possession, thereby inviting the error he now appeals. "[O]n appeal, a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *State v. Dunn,* 850 P.2d 1201, 1220 (Utah 1993). After jury selection, counsel for Defendant told the trial court that if the jury found Defendant guilty, Defendant would stipulate to a prior conviction for possession. Defense counsel also explained that the prior judgment contained

a clerical error, but that Defendant was still willing to stipulate to the prior conviction. Moreover, after Defendant was found guilty, Defendant again stipulated to the prior conviction for possession. When the trial court asked if there was "[a]ny legal reason why sentence should not be pronounced," counsel for Defendant replied, "None, your honor."

¶ 23 Clearly, Defendant invited the alleged error he now appeals by repeatedly stipulating to the fact that he had a prior conviction for possession. The rationale behind this stipulation is clear: regardless of whether the prior conviction was for simple possession or possession with intent to distribute, the prior conviction enhanced the Defendant's sentence. Therefore, because Defendant invited the error he now appeals, we will not review it.[3]

## CONCLUSION

¶ 24 The reasonable doubt jury instruction given at Defendant's trial is not manifestly unjust because it correctly conveyed the concept of reasonable doubt to the jury. Further, because Defendant invited the error, we decline to address Defendant's claim that his sentence enhancement is somehow erroneous because of a clerical error in Defendant's prior judgment.

¶ 25 WE CONCUR: RUSSELL W. BENCH, Presiding Judge PAMELA T. GREENWOOD, Associate Presiding Judge.

---

2. In *State v. Cruz,* 2005 UT 45, 122 P.3d 543, the Utah Supreme Court reviewed reasonable doubt jury instructions that included the phrase "dispel all reasonable doubt" and found that those instructions were not erroneous. *Id.* at ¶¶ 11, 18. Because "dispel all reasonable doubt" and "eliminate all reasonable doubt" are functionally equivalent, Defendant's reasonable doubt jury instruction is not erroneous.

3. In the alternative, Defendant argues that his counsel rendered ineffective assistance because he counseled Defendant to stipulate to the prior conviction. However, even if we were to find defense counsel's assistance defective for this reason, Defendant cannot prove that "but for counsel's deficient performance[,] there is a reasonable probability that the outcome ... would

have been different." *Wickham v. Galetka,* 2002 UT 72, ¶ 19, 61 P.3d 978 (quotations and citation omitted). Rule 30(b) of the Utah Rules of Criminal Procedure states that "[c]lerical mistakes in judgments ... may be corrected by the court *at any time* and after such notice, if any, as the court may order." Utah R.Crim. P. 30(b) (emphasis added). Moreover, a clerical error, once determined, can be amended and made "effective as of a prior date so that the record accurately reflects that which took place." *Preece v. Preece,* 682 P.2d 298, 299 (Utah 1984). Because both the trial court and the parties agreed that the error in the prior judgment was simply clerical, the prior judgment would still be final and effective for the purposes of enhancing Defendant's sentence.